# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| MARY PEARCE,<br>      Appellant, | DOCKET NUMBER<br>DE-0714-19-0443-I-1 |
|     v. | |
| DEPARTMENT OF VETERANS<br>  AFFAIRS,<br>      Agency. | DATE: August 11, 2023 |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Thomas F. Muther, Jr., Esquire, Denver, Colorado, for the appellant.

Chau Phan, Lakewood, Colorado, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

### FINAL ORDER

¶1     The agency has filed a petition for review of the initial decision, which reversed the appellant's removal taken under 38 U.S.C. § 714. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2 The following facts are undisputed. The appellant was a GS-14 Supervisory Social Worker, employed as the Social Work Service Chief for the agency's Eastern Colorado Healthcare System. Initial Appeal File (IAF), Tab 6 at 13, 81. Central to this appeal is the agency's Contract Nursing Home program, a system through which the agency contracts with privately-owned nursing homes to provide care for eligible veterans. Hearing Recording, Day 1 (HR 1) at 2:05 (testimony of the Acting Contract Nursing Home Supervisor). In order to pay contract nursing homes for services rendered, the agency receives invoices from the nursing homes, reconciles the invoices, and submits them to the Department of the Treasury for payment. HR 1 at 3:50 (testimony of the Acting Contract Nursing Home Supervisor); Hearing Recording, Day 2 (HR 2), Track 1 at 8:00 (testimony of the appellant).

¶3 On November 1, 2018, the Social Work Service became responsible for reconciliations, a responsibility which was previously held by the agency's Network Authorization Office. IAF, Tab 32 at 45. While the Network

Authorization Office held the reconciliation function, the average total processing time for an invoice was approximately 100 days. IAF, Tab 32 at 45. Soon after the Social Work Service assumed this function, the average processing time was reduced to about 80 days. *Id*.

¶4     On April 17, 2019, however, a U.S. Senator made an informal inquiry on behalf of one contract nursing home into payment delays that were jeopardizing the institution's ability to make payroll. IAF, Tab 6 at 149. This was followed on May 22, 2019, with a formal inquiry from another U.S. Senator to the Secretary of Veterans Affairs concerning contract nursing home payment delays in the Eastern Colorado Healthcare System in general. *Id*. at 84. Meanwhile, on April 19, 2019, the agency launched an investigation into the matter, which concluded on May 3, 2019, with findings on the scope, nature, and causes of the problem, as well as recommendations to improve payment processing. *Id*. at 85-87. In the wake of these events, the appellant took steps to reduce reconciliation processing times to an average of 23 days by June 5, 2019, and an average of less than 10 days by June 26. IAF, Tab 32 at 41-45.

¶5     Nevertheless, on August 30, 2019, the agency proposed the appellant's removal under 38 U.S.C. § 714, based on one charge of "Failure to Ensure Proper Oversight." IAF, Tab 6 at 81-83. The agency specified as follows:

> From approximately November 6, 2018-May 29, 2019, you failed to provide proper supervision and oversight for your employees in processing of room and board invoices to Nursing Homes affiliated with the Contract Nursing Home Program. This failure resulted in delayed payment of approximately 613 invoices for a total of approximately $5,050,305.37, violating 5 CFR 1315, the Prompt Payment Act.[2]

---

[2] The legal citation provided by the agency is not actually, as suggested by the language of the proposal notice, to the Prompt Payment Act, Pub. L. 97-452, § 1(18)(A), 96 Stat. 2467 (1983) (codified as amended at 31 U.S.C. chapter 39). Rather it is to the implementing regulations, issued by the Office of Management and Budget and found at 5 C.F.R. part 1315. Those regulations provide in relevant part that an agency must

*Id*. at 81. After the appellant responded, the agency issued a decision removing her effective September 13, 2019. *Id*. at 13-24.

¶6       The appellant filed a Board appeal, challenging the merits of the removal action and raising affirmative defenses of sex discrimination and retaliation for equal employment opportunity activity. IAF, Tab 1 at 4, Tab 36 at 2. After a hearing, the administrative judge issued an initial decision reversing the appellant's removal on the merits. IAF, Tab 53, Initial Decision (ID). He construed the agency's charge as one of negligence in the performance of duties and found that the agency failed to prove the charge by substantial evidence. ID at 8-14. Having reversed the removal on that basis, the administrative judge declined to reach the appellant's affirmative defenses. ID at 14.

¶7       The agency has filed a petition for review, contesting several of the administrative judge's findings of fact. Petition for Review (PFR) File, Tab 1. The appellant has filed a response. PFR File, Tab 3.

## ANALYSIS

¶8       In an appeal of an adverse action taken under 38 U.S.C. § 714(a), the agency bears the burden of proving its charges by substantial evidence. 38 U.S.C. § 714(d)(2)(a). If the agency meets this standard, the Board may not mitigate the agency's chosen penalty, but it is nevertheless required to review the penalty as part of the agency's overall decision. 38 U.S.C. § 714(d)(2)(B), (3)(C); *Sayers v. Department of Veterans Affairs*, 954 F.3d 1370, 1375-79 (Fed. Cir. 2020). Further, the agency's decision may not be sustained if the appellant shows that the decision was based on a prohibited personnel practice described in 5 U.S.C. § 2302(b). 5 U.S.C. § 7701(c)(2)(B).

---

generally make contracted payments within 30 days of receiving a proper invoice. 5 C.F.R. § 1315.4(f)-(g).

¶9      It appears that the parties agree with the administrative judge's interpretation of the charge as concerning negligent performance of duties.  IAF, Tab 29 at 1-2; ID at 8.  To prove its charge, the agency must show by substantial evidence that the appellant failed to exercise the degree of care that a person of ordinary prudence with the same experience would exercise in the same situation. *Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1011 (Fed. Cir. 2019); *Mendez v. Department of the Treasury*, 88 M.S.P.R. 596, ¶ 26 (2001).  The administrative judge found that the agency failed to meet this standard because the appellant, through no fault of her own, was unaware of the 30-day payment deadline until March 2019, at which point she immediately took action, bringing the reconciliation process into compliance by May 2019.  ID at 6, 8-14.

¶10     Besides the undisputed fact that the agency failed to inform the appellant of a 30-day payment deadline, the administrative judge also found that the appellant was not negligent in failing to discover the deadline on her own.  He found that the appellant's duties were primarily clinical and did not involve contract review. ID at 13.  He also found that the contracts were long and complicated, so even if Social Work Service staff had reviewed them, the contracts' single reference to the Prompt Payment Act may not have been sufficient to alert them to the deadline.  ID at 1-13 & n.26.  The administrative judge further found that even if the appellant had known about the 30-day deadline, compliance was outside her control because the third step of the payment process was still held by the Network Authorization Office and could itself take upwards of 30 days.  ID at 14.

¶11     The agency disputes these findings on review.  First, it argues that, as evidenced by the Chief of Social Work functional statement, the appellant's duties were not primarily clinical.  Rather, the position is mostly administrative in nature.  PFR File, Tab 1 at 7; IAF, Tab 19 at 4-11.  However, far from providing a sufficiently sound basis to overturn the demeanor-based credibility determination underlying the administrative judge's finding, our review of the functional statement leaves us with an even firmer conviction that the finding was

correct. ID at 2 & n.3; *see Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Although the appellant's primary job duties might technically be characterized as administrative, they pertain to administering the Social Work Service's clinical practice. IAF, Tab 19 at 4-11. There is nothing in the functional statement to suggest that the Social Work Service Chief spends a significant amount of time administering contracts or that contract work is part of the requisite knowledge skills and abilities for the position.[3] IAF, Tab 19 at 9-10; Veterans' Administration Handbook 5005, Part II, Appendix G39(3), (4)(o) (Sept. 10, 2019), https://www.va.gov/vapubs/viewPublication.asp?Pub_ID=1061&FType=2.

¶12    Second, the agency disputes the administrative judge's finding that the Social Work Service's preexisting function of reconciling pharmacy invoices was not comparable to its new function of reconciling contract nursing home invoices. PFR File, Tab 1 at 8; ID at 13 n.25. However, we find that this issue is immaterial to the outcome of the appeal, which essentially hinges on whether the appellant knew or should have known that there was a 30-day deadline for making the contract nursing home payments. The agency argues that the appellant should have already been familiar with the requirements of the Prompt Payment Act because they apply to the pharmacy invoices that the Social Work Service was already reconciling. PFR File, Tab 1 at 8-9. However, particularly absent evidence that the agency informed the appellant about the application of this law to this particular program, we see no reason to assume that the appellant should necessarily be familiar with every law affecting every program under her management.

---

[3] The functional statement provides that the incumbent reviews contracts to ensure that resources are being utilized efficiently. IAF, Tab 19 at 47. However, this appears to us to be something different from the reconciliation of invoices, and besides, it is just one among scores of duties described in this lengthy functional statement.

¶13        Third, the agency argues that compliance with the Prompt Payment Act was not outside the appellant's control.  PFR File, Tab 1 at 10.  The agency's argument is well taken to the extent that a reconciliation time of more than 30 days would prevent timely payment no matter how quickly the Network Authorization Office might complete its part of the operation.  However, the reverse is also true; even a prompt reconciliation by the Social Work Service could not prevent an untimely payment caused by delays at the Network Authorization Office.  Therefore, although the Social Work Service has a part to play in complying with the Prompt Payment Act, the matter is not entirely within its control.  In any event, we do not perceive this matter as material to the key issue in this appeal, which is whether the appellant was negligent in failing to learn of the 30-day deadline under the Prompt Payment Act.

¶14        Fourth, conceding that it did not specifically inform the appellant of the 30-day deadline, the agency argues that she was nevertheless negligent in failing to review the nursing home contracts and discover the deadline for herself.[4]  PFR File, Tab 1 at 9.  The administrative judge thoroughly addressed this issue by reference to a representative contract, and we agree with his analysis.  ID at 13-14 & n.26.  Our only disagreement is with his characterization of the contract as "somewhat difficult to decipher," which we believe to be an understatement under the circumstances.  ID at 14; IAF, Tab 15 at 84-118.  In any event, we seriously doubt that the agency actually expected the appellant to discover the 30-day deadline through contract review because such an expectation would have been completely unreasonable.  The agency would have us believe that the appellant was supposed to have found this reference to the Prompt Payment Act, buried

---

[4] The contracts do not set forth a 30-day payment deadline on their face.  They provide only that "[t]he Government will make payment in accordance with the Prompt Payment Act (31 U.S.C. 3903) and prompt payment regulations at 5 CFR part 1315."

amidst hundreds of other legal citations in the boilerplate of a 43-page contract,[5] read the cited sections of the code, and deduced that a 30-day payment deadline applied in her situation.[6]  And this despite the fact that she inherited the reconciliation program from an office that was routinely taking much longer to reconcile invoices, without any indication that this was a problem, and despite the fact that the Social Work Service was performing reconciliation duties rather than general contract administration.  The agency points out that the appellant's predecessor as Social Work Service Chief learned of the Prompt Payment Act by reading work-related materials on her own.  PFR File, Tab 1 at 9.  However, we cannot find that the appellant was negligent in failing to happen upon the Prompt Payment Act previously during the course of her duties.

¶15      The agency argues that "[t]he Administrative Judge erred when he concluded [the Network Authorization Office] or someone in the Appellant's chain-of-command needed to set clear expectations regarding invoice reconciliation timing."  *Id.*  We disagree.  Setting clear expectations for

---

[5] By our count, the contract contains no fewer than 240 citations to various statutes, regulations, and executive orders.  IAF, Tab 15 at 84-118.  The agency has not explained whether it expected the appellant to familiarize herself with each and every one of these statutes, regulations, and executive orders, or only the most important ones, and if only the most important ones, how she was supposed to tell them apart.

[6] To say that the Prompt Payment Act requires the Government to make payments within 30 days of the date the invoice is received is an oversimplification.  The statute and regulations provide four different ways of determining a payment due date, of which the 30-day provision applies only when none of the others do.  31 U.S.C. § 3903(a)(1); 5 C.F.R. § 1315.4(g).  The appellant, who is neither an attorney nor a contract administrator, was apparently expected to figure out on her own which of these deadlines applied to the invoices at issue.  But even this does not capture the difficulty of the puzzle that the agency presented to her because the contract only refers to the statutory and regulatory provisions generically and contains no hint that their significance might have anything to do with a deadline that the appellant was responsible for meeting.  Therefore, even if the appellant had, for some reason, decided to read the code provisions mentioned in the contract, she would have had to find the specific operative provisions among hundreds of non-operative ones, without even knowing what she was looking for.  IAF, Tab 15 at 100.

Government employees is important, particularly when the health and welfare of vulnerable veterans is at stake, or when a failure to meet those expectations might precipitate a congressional inquiry or result in employee discipline.[7] *See Harriss v. Department of the Navy*, 68 M.S.P.R. 427, 434 (1995) (finding that an employee "may not be disciplined for failing to perform a duty that the agency did not make her aware she had"). A responsible agency official could have clearly notified the appellant that reconciliations must be completed promptly so that the entire payment process takes no more than 30 days. For some reason, this never happened. It may perhaps be inferred that the payments were delayed because somebody at the agency was negligent, but the agency has not provided substantial evidence to show that the appellant was negligent under the circumstances of this case.

¶16      As stated above, the administrative judge did not reach the appellant's affirmative defenses of sex discrimination and retaliation for equal employment opportunity activity. ID at 14. However, these claims, if proven, could potentially have garnered the appellant further relief in the form of compensatory damages. *See* 42 U.S.C. § 1981a(a)(1); *see also Hodge v. Department of Veterans Affairs*, 72 M.S.P.R. 470, 472 (1996) (finding that, when an employee has outstanding, viable claims of compensatory damages, the agency's complete rescission of the action appealed does not afford her all of the relief available before the Board). Nevertheless, the appellant, who is represented by an attorney, did not make a request for damages as specified in 5 C.F.R. § 1201.204(a), and she has not raised the issue on review. *See* 5 C.F.R. § 1201.115 ("The Board normally will consider only issues raised in a timely filed petition or cross

---

[7] The agency asserts that, "[t]he Chief of Social Work position is a high graded, GS-14, position that should function independently." PFR File, Tab 1 at 9. Although this may be true, IAF, Tab 19 at 4, the agency is still responsible for informing the Social Work Service Chief of the goals that it expects her organization to accomplish.

petition for review."). We therefore decline to disturb the administrative judge's ruling on this matter.

## ORDER

¶17     We ORDER the agency to cancel the appellant's removal and to restore her effective September 13, 2019. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶18     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶19     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶20     No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶21     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE OF APPEAL RIGHTS[8]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9]  The court of appeals must <u>receive</u> your petition for

---

[9] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.

review within **60 days** of <u>the date of issuance</u> of this decision. <u>5 U.S.C. § 7703</u>(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:            /s/ for

                                   Jennifer Everling
                                   Acting Clerk of the Board

Washington, D.C.



| | |
|---|---|
| | **DEFENSE FINANCE AND ACCOUNTING SERVICE**<br>**Civilian Pay Operations** |

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

<u>Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:</u>

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63).
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion.  Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.